## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN A. KUTTNER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 4290 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SHERIFF JOHN E. ZARUBA (in his | ) | |
| individual and official capacity); OFFICE | ) | |
| OF THE SHERIFF, COUNTY OF | ) | |
| DUPAGE, ILLINOIS; and | ) | |
| DUPAGE COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Kuttner alleges that the DuPage County Sheriff's Office, Sheriff

John E. Zaruba (individually and in his official capacity), and DuPage County

(collectively "Defendants" or "the Sheriff," unless context dictates otherwise)

discriminated and retaliated against her on the basis of her gender, in violation of Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1]  Plaintiff also claims that

Defendants violated the Employee Retirement Income Security Act (ERISA) by

refusing to pay her for sick-day benefits and child-adoption benefits owed to her under

the Sheriff's welfare benefits plans.  Defendants have moved to dismiss (R. 10) both the

Title VII claim and the ERISA claim pursuant to Federal Rule of Civil Procedure

12(b)(6).  For the following reasons, the Court denies in part and grants in part the

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

motion to dismiss: the Title VII claim survives (for now), but the ERISA claim is dismissed.

## I.

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in Plaintiff's favor. Susan Kuttner was a deputy sheriff for the DuPage County Sheriff Department from 1998 to February 2010, when she was fired. R. 1, Compl. ¶ 15.[2] Despite accumulating a "relatively unblemished disciplinary record" during her 12-year tenure as a deputy, all was not well. *Id*. ¶ 17. Over the course of two years, from around June 2006 to March 2008, Kuttner wrote at least five letters to her superiors, complaining about the disparate treatment between male and female deputies in work assignments, the safety of work conditions, and other aspects of employment. *Id*. ¶¶ 20-30.

The complaint acknowledges that, in October 2009, the Sheriff brought disciplinary charges against Kuttner before an administrative agency, the DuPage County Sheriff's Merit Commission. R. 1 ¶¶ 34-38. The Sheriff contended that Kuttner had violated two employment regulations: "Wearing of the Uniform" at an improper location, as well as the related violation of "Conduct Unbecoming" a deputy sheriff. *Id*. ¶ 39.[3] The Merit Commission did find Kuttner guilty of the administrative

---

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the relevant page or paragraph number.

[3]According to an exhibit attached to Defendants' motion to dismiss, the violations were based on Kuttner's conduct in accompanying someone on a debt-collection visit. Specifically, Kuttner was aware that an individual, Steve Cooper, was in the business of loaning money. R. 10, Ex. 3 at 1. Kuttner accompanied Cooper on his visit to the home of a debtor. *Id*. at 2.

charges, and terminated her employment. *Id.* ¶ 39. Kuttner alleges, however, that similarly situated male deputies were not terminated for similar regulatory violations, and indeed some similarly situated male deputies were not even brought up on charges before the Merit Commission, let alone disciplined. *Id.* ¶ 42. The complaint purports to list the names and to describe the circumstances surrounding the male deputies who were not terminated for similar, or similarly serious, violations. *Id.* ¶ 42(a)-(o).

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that the rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a

---

Kuttner wore at least part of her official Sheriff's uniform during the visit. *Id.* The debtor was not home, but the debtor's father answered the door. *Id.* Kuttner gave the father a business card that displayed the name "Susan A. McKinley." *Id.*

defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal,* 556 U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are *factual*, rather than mere *legal* conclusions. *Iqbal*, 129 S. Ct. at 1950.

## III.

### A.

Defendants first challenge the Title VII gender-discrimination claim, arguing primarily that Kuttner stipulated, before the Merit Commission, to violating the "Conduct Unbecoming" and "Wearing of the Uniform" employment regulations, thereby undermining – both factually and legally – the allegation of gender discrimination R. 10 at 5-8. To support these arguments, Defendants attach various exhibits to their motion to dismiss, including a stipulation entered into by Kuttner before the Merit Commission. R. 10, Exhs. 1-3. But even if the exhibits could be considered in addition to, and beyond, Plaintiff's complaint, Defendants' arguments do not warrant dismissal of the Title VII claim.

4

With regard to the factual argument, Plaintiff's stipulation that she, on one occasion, wore her uniform in an improper setting and committed conduct unbecoming of a deputy, does not fatally undermine her factual allegation that her firing was based on gender discrimination. The complaint purports to identify more than 15 similarly-situated male deputies and to describe alleged misconduct in which those deputies engaged – and yet those deputies were not fired. R. 1 ¶ 42(a)-(o). Additionally, the complaint alleges that two other female deputies engaged in relatively minor employment misconduct (relative, that is, to alleged misconduct committed by male deputies) that resulted in the female deputies' firing. *Id.* ¶ 44. And beyond the alleged disparate treatment in disciplinary charges, the complaint further alleges other instances of gender discrimination in work assignments, the safety of work conditions, and other aspects of employment. *Id.* ¶¶ 20-30.[4] These allegations are more than enough to render plausible the claim of gender discrimination, despite Plaintiff's stipulation that she should not have worn her uniform on that one occasion.

This result is especially true in light of *Swanson v. Citibank*, 614 F.3d 400, 405-06 (7th Cir. 2010). *Swanson* explained that, although the Supreme Court's recent Rule 8 decisions – *Twombly*, *Iqbal*, and the lesser-known *Erickson v. Pardus*, 551 U.S. 89

---

[4]For examples: first, bringing inmates food and supplies was more dangerous for female deputies because female-inmate cells lacked safety mechanisms that existed in male-inmate cells. R. 1 ¶ 20. Second, "punishment" posts – assignments with heavier workloads and higher exposure to toxins and injury – for female deputies required greater demands than they did for male deputies. *Id.* ¶ 25. Third, male deputies had better overtime scheduling, shift-switching flexibility, and promotion opportunities. *Id.* ¶ 24. Fourth, Kuttner did not receive any of her benefits while she was suspended, whereas suspended male deputies lost none of their benefits. *Id.* ¶ 28.

(2007) – did discard the any "possibility" standard in favor of a "plausibility" pleading burden, the Supreme Court did reaffirm that "in many straightforward cases, it will not be any more difficult today of a plaintiff to meet that burden than it was before the Court's recent decisions." 614 F.3d at 404. For example, in an employment discrimination case:

> A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what "really" went on in this plaintiff's case.

*Id.* at 404-05; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002) (simplified pleading standard applies to employment discrimination cases). In contrast, a "more complex case involving financial derivatives, or tax fraud that the parties tried hard to conceal, or antitrust violations, will require more detail . . . ." *Swanson*, 614 F.3d at 405. In light of the nature of this case, Plaintiff's complaint here sufficiently alleges that gender discrimination is the reason that she was treated dissimilarly – both in being charged administratively with violations and in being fired – from male deputies who engaged in similar, or indeed worse, employment misconduct.

With regard to the Sheriff's legal (as distinct from factual) argument, the Sheriff argues that because Kuttner did not appeal to an Illinois state court the Merit Commission's decision to fire her, *res judicata* (that is, claim preclusion) bars her Title VII claim. R. 10 at 6-8. Specifically, under Illinois state law, the Merit Commission has the power to promote, discipline, and discharge county sheriff's deputies. 55 ILCS

5/3-8007.  Termination decisions issued by the Merit Commission are subject to review by the Illinois Circuit Court.  55 ILCS 5/3-8014; 735 ILCS 5/3-104.  The Sheriff argues that Kuttner is leveling, through the Title VII claim, an improper collateral attack on the Merit Commission's findings because she "chose not to appeal, despite the clear authority to seek judicial review." R. 10 at 8.

But the Supreme Court has already explained that claim preclusion does not apply in this context to Title VII claims.  *Tennessee v. Elliott*, 478 U.S. 788, 794-95 (1986).  In *Elliott*, a state university proposed to fire the plaintiff for inadequate work performance.  The plaintiff alleged that he was being discharged for racial reasons, and filed a Title VII claim in federal court.  Initially, the district court enjoined the university from taking action against the plaintiff, but the district court eventually lifted the stay, and a state administrative law judge ruled that the proposed firing was not racially motivated.  *Id.* at 791.[5]  After an unsuccessful administrative appeal, the plaintiff in *Elliott* – and this is significant for purposes of Kuttner's case – did not seek review of the administrative proceedings in state court, but rather returned to federal court to pursue federal claims, including a Title VII claim.  *Id.* at 792.

Despite the choice of the plaintiff in *Elliott* to forgo a state-court appeal of the administrative proceedings, the Supreme Court held that neither statutory preclusion, 28 U.S.C. § 1738, nor federal common-law preclusion applied to bar the Title VII claim. The text of Section 1738 makes clear that statutory preclusion applies only to state

---

[5]The ALJ in *Elliott* did decide that discharge was too severe a penalty.  478 U.S. at 791.

*court* determinations, not administrative-agency findings. And Congress intended for Title VII claims to receive a *de novo* determination in federal court, thus precluding a court-fashioned common-law rule of preclusion. Accordingly, the Supreme Court held that "Congress did not intend unreviewed state administrative proceedings to have a preclusive effect on Title VII claims." *Id.* at 796.

Just so here. Illinois Circuit Court review of the Merit Commission's findings is not a prerequisite for a Title VII claim, or put another way, the absence of state-court review of the administrative proceeding does not trigger claim preclusion. *See also Carver v. Nall*, 172 F.3d 513, 515 (7th Cir. 1999) ("*res judicata* cannot operate in the absence of a judgment"). Indeed, contrary to Defendants' claim-preclusion argument, the absence of a state-court judgment is what *prevents* – rather than triggers – a claim-preclusion bar to Plaintiff's Title VII claim.

## B.

Although Plaintiff's Title VII claim has survived the motion to dismiss, the Court notes that the parties should address a particular issue through the discovery process. Generally speaking, for purposes of determining whether an employer acted with discriminatory intent, the relevant actor is the person who made the employment decision. *E.g., Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003). Here, one potential problem with Plaintiff's Title VII claim is that the Merit Commission – not the Sheriff individually – apparently made the decision to fire her. R. 1 ¶ 39. Absent proof that the Merit Commission itself acted with discriminatory intent, the Title VII

claim might not survive a summary judgment motion. It should be noted, however, that in some circumstances an employer may still be held liable if a biased supervisor – even if not the ultimate decision-maker – exerts "singular influence" over the ostensible decision-maker. *E.g.*, *Rozskowiak v. Village of Arlington Heights*, 415 F.3d 608, 613 (7th Cir. 2005). In some circumstances, an unbiased decision-maker would be considered the biased party's "cat's paw." *Brewer v. Board of Trustees of University of Illinois*, 479 F.3d 908, 917-18 (7th Cir. 2007). "[U]nder the [cat's paw] theory, the discriminatory animus of a non-decision-maker is imputed to the decision-maker where the former has singular influence over the latter and uses that influence to cause the adverse employment action." *Staub v. Proctor Hospital*, 560 F.3d 647, 651, 656 (7th Cir. 2009) (citing *Brewer v. Board of Trustees of University of Illinois*, 479 F.3d 908 (7th Cir. 2007)), *cert. granted*, 130 S. Ct. 2089 (2010).

Courts examine the decision-maker's actions to detect the presence of a "singular influence." Singular influence exists, for example, if the decision-maker acts as a rubber stamp and relies solely on the non-decision-maker's evidence. *E.g., Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1015 (7th Cir. 2004). If the decision-maker considers all sides of the story and makes an independent determination, there is no singular influence. *E.g., Lucas v. Chicago Transit Authority,* 367 F.3d 714, 730 (7th Cir. 2004). Plaintiff here has alleged some facts that, if taken as true and if reasonable inferences are drawn in Plaintiff's favor, allow the complaint to survive a motion to dismiss, but further exploration of who ultimately decided to fire Plaintiff, whether those decision-

makers themselves acted based on gender discrimination, and whether any of the named defendants[6] had a singular influence over those decision-makers are issues that should be the subject of discovery.[7]

## IV.

With regard to the ERISA claim, Kuttner claims that she is owed compensation for sick-day benefits and child-adoption benefits under § 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B), R. 1 ¶¶ 49-57. The Sheriff argues that ERISA does not apply because the plan in question falls under the "government plan" exception to ERISA. R. 10 at 8-9. That exception states: "The provisions of this subchapter shall not apply to any employee benefit plan if – (1) such plan is a governmental plan (as defined in section 1002(32) of this title)." 29 U.S.C. § 1003(b)(1). Section 1002 defines a governmental plan as a "plan established or maintained for its employees by the Government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). Congress "intended to 'refrain from interfering with the manner in which state and local governments operate employee benefit systems.'" *Board of Trustees v. First Nat'l Bank of Chicago*, No. 90 C

---

[6]Defendants' motion to dismiss does not raise the issue of whether Sheriff Zaruba can be held liable individually under Title VII. It appears he cannot: "It is by now well established in this court that 'a supervisor does not, in his individual capacity, fall within Title VII's definition of employer.'" *Sattar v. Motorola*, 138 F.3d 1164, 1168 (7th Cir. 1998). Sheriff Zaruba might very well wish to raise this issue at the summary judgment stage.

[7]Of course, this discussion is subject to change whenever the Supreme Court decides the *Staub* appeal.

4862, 1991 WL 156656, at *3 (N.D. Ill. May 16, 1991) (quoting *Feinstein v. Lewis*, 477 F. Supp. 1256, 1261 (S.D.N.Y. 1979)).

The plain language of the ERISA exception and the definition of government plan applies to the county benefits plan at issue in Kuttner's ERISA claim. The DuPage County Sheriff's Office is a government agency of a State subdivision, and thus is exempt from the subchapter covering Plaintiff's ERISA claim. Plaintiff all but concedes the applicability of the exception: she merely states, in a non-responsive argument in her response brief, that "[w]hether it [the benefits plan] is a government plan or ERISA is simply a labeling error," and that "a possible subsequent amended complaint" can use the "correct label." R. 17 at ¶¶ 19-20. Plaintiff cites no statute and no case law in response to Defendants' argument that ERISA does not regulate the government plan, and therefore, Plaintiff's ERISA claim is dismissed.[8]

---

[8]There is some confusion over how courts should categorize dismissal of ERISA actions based on statutory exemptions. Some courts interpret ERISA exemptions as removing the court's subject matter jurisdiction. *E.g., Koval v. Washington County Redevelopment Authority,* 574 F.3d 238, 239, 244 (3d Cir. 2009); *Shirley v. Maxicare Texas*, 921 F.2d 565, 569 (5th Cir. 1991). Others state that claims over exempt plans are properly dismissed under Rule 12(b)(6) for failure to state a claim. *E.g., Daniels-Hall v. Nat'l Education Ass'n*, 629 F.3d 992, 997 (9th Cir. 2010); *Bleiler v. Cristwood Construction*, 72 F.3d 13, 15 n.1, 16 n.3 (2d Cir. 1995). The Seventh Circuit does not appear to have addressed the subject. The Court agrees with those courts that categorize exemption dismissals as based on a failure-to-state-a-claim, rather than based on a lack of authority to hear the case. In other words, the Court had subject matter jurisdiction to determine whether Defendants' benefits plan was a government plan covered by ERISA's protections.

## V.

For the reasons discussed above, the Court denies in part and grants in part Defendants' motion to dismiss (R. 10): the Title VII claim survives, and the ERISA claim is dismissed.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

February 22, 2011