UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Susan Kuttner, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 04290 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Sheriff John E. Zaruba,(in his individual | ) | |
| and official capacity); Office of the Sheriff, | ) | |
| County of DuPage, Illinois; and | ) | |
| DuPage County, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Kuttner brought this suit against Sheriff John Zuruba, in his individual and official capacities, the DuPage County Sheriff's Office, and the County of DuPage, alleging workplace discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. R. 56, Am. Compl. at 8-15.[1] Kuttner also brought a state-law breach of contract claim. *Id.* at 16-18. Defendants have moved for summary judgment on all claims. R. 94. For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

---

[1] This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. Citation to the docket is "R." followed by the docket entry. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Defendants' Statement of Facts) [R. 96], "Pl.'s Resp. DSOF"(for Kuttner's response to Defendants' Statement of Facts) [R. 110], "PSAF" (for Kuttner's Statement of Additional Facts) [R. 113], and "Defs.' Resp. PSAF"(for Defendants' Response to Kuttner's Additional Facts) [R. 120], followed by the paragraph number.

## I.    Background[2]

In deciding this summary judgment motion, the Court must view the evidence in the light most favorable to the non-movant, Kuttner. Fed. R. Civ. P. 56. Kuttner was a deputy sheriff with the DuPage County Sheriff's Office from 1998 until 2010. DSOF ¶¶ 1, 17-18. Defendant John Zaruba is the Sheriff of DuPage County. R. 56, Am. Compl. ¶ 9. In February 2010, Kuttner was fired as a result of charges Zaruba filed with the DuPage County Sheriff's Merit Commission. DSOF ¶¶ 2, 18. The Merit Commission, which is not a defendant in this suit, is a three-person body of the DuPage County Sheriff's Office that handles hiring, promotions, and disciplinary matters for the office. *Id.* ¶¶ 3, 4, 18 (citing 55 ILCS 5/3-8007). Among other things, the Merit Commission reviews complaints against deputy sheriffs (like Kuttner), determines whether the complaints have merit, and decides the appropriate punishment (such as termination, demotion, loss of seniority, or suspension). *Id.* ¶ 4 (citing 55 ILCS 5/3-8014). Only the Sheriff and the State's Attorney may refer a deputy sheriff to the Commission for discipline. *Id.* For all relevant purposes of this summary judgment motion, only the Merit Commission can remove, demote, or suspend a deputy sheriff. *Id.*

---

[2] Kuttner's Statement of Additional Facts, R. 113, failed to comply with Local Rule 56.1 in many instances. Many paragraphs contained multiple facts (instead of just one at a time) with no citation to the record, or a general citation to one or more exhibits. *See, e.g.*, PSAF ¶¶ 25, 29, 36, 43, 44, 48, 50, 63, 65. The Court notes below where purported "facts" from Kuttner's Rule 56.1 statement were rejected for failure to reference support in the record for the contention. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005).

In October 2009, Zaruba brought charges against Kuttner for an incident that occurred several months earlier. *Id.* ¶¶ 2, 12. A disciplinary hearing before the Merit Commission followed, and in the course of that proceeding, Kuttner stipulated to the following facts regarding the incident: Kuttner was friends with a man named Steve Cooper. DSOF ¶ 12; R. 96-4, Defs.' Exh. 4 (Stipulation). Kuttner knew that Cooper was in the business of making personal loans, and specifically that he had loaned money to a man named Reginald Benjamin in April 2009. DSOF ¶ 12; R. 96-4. One afternoon in April or May of 2009, Kuttner visited the home of Benjamin's parents in Hinsdale, Illinois. *Id.* Kuttner knew at the time of the visit that Benjamin had not repaid his loan to Cooper. *Id.* When she went to the home in Hinsdale that day, Kuttner was at least partially dressed in her official sheriff's uniform. *Id.* After learning from Benjamin's father that his son was not home, Kuttner gave him a business card that listed her name and a company called "Team in Focus, DC International." *Id.*

Although Kuttner admits all of those facts, she has consistently denied that she was attempting to collect a debt when she visited the home in Hinsdale. Pl.'s Resp. DSOF ¶¶ 12, 16; PSAF ¶ 2. Sheriff Zaruba took a different view of the matter. In his complaint to the Merit Commission, Zaruba alleged that Kuttner "assisted [an individual] with the collection of a loan of money, ... while off-duty, but in her official uniform and wearing her police star." DSOF ¶ 6; R. 96-2, Defs.' Exh. 2 (Merit Commission Findings and Adjudication) ¶ 2. Zaruba alleged that Kuttner violated six Sheriff's Office regulations: abuse of position, conduct immoral, conduct unbecoming, intervention, outside employment, and wearing of the uniform. DSOF ¶ 7. Kuttner,

who was represented by an attorney at the time, agreed to admit to two violations (conduct unbecoming and wearing of the uniform), and in exchange Zaruba agreed to drop the remaining charges. *Id.* ¶¶ 10, 13. After a hearing on the two remaining charges, the Merit Commission found Kuttner guilty and determined that her actions "constitute[d] an egregious indifference and/or lack of judgment to the requirements of her office and position that make her continuation as a deputy Sheriff detrimental to the discipline and efficiency of the Sheriff's Office and warrant [her] dismissal and discharge." *Id.* ¶¶ 14, 17; R. 96-3, Defs.' Exh. 3 (Disciplinary Order) ¶ 7. The Merit Commission formally terminated Kuttner's employment on February 24, 2010. DSOF ¶¶ 17-18. On March 10, 2010, Kuttner filed a complaint with the EEOC alleging that between October 7, 2009 (the date she was placed on paid leave) and February 24, 2010, she was discriminated against because of her sex. R. 96-6, Defs.' Exh. 6.

In her amended complaint, Kuttner alleges that her she was treated unfairly as compared to similarly situated male deputies. Am. Compl. ¶ 44. Therefore, in her response to Defendants' motion for summary judgment, Kuttner sought to present evidence that male deputies who committed similar misconduct were not punished as severely. That evidence is briefly reviewed here:

- *Deputy Richard Morgan*: Morgan made two personal visits to a female inmate in jail in 2008, while in uniform. PSAF ¶ 4. Morgan was charged with four violations of department policy, including abuse of position and conduct unbecoming, but was sent to Internal Affairs, and not the Merit Commission, for his conduct. *Id.* ¶ 5; R. 117-1, Pl.'s Exh. D at 1446-48 (Morgan Disciplinary Charges). Internal Affairs found Deputy Morgan guilty of only one charge (abuse of position), and issued a written reprimand. PSAF ¶¶ 5-6; Pl.'s Exh. D at 1489-91. Morgan had previously been demoted and put on probation in 2004. PSAF ¶ 5 n.2; R. 117-1, Pl.'s

Exh. F at 57.[3] Deputy Morgan was also a part-owner of a commercial cleaning business while employed at the Sheriff's Office. R. 117-5, Pl.'s Exh. O (Morgan Dep.) 5:16-22, 6:10-11. Deputy Morgan denied that his ownership interest in the business violated any policies of the Sheriff's Office. *Id.* 6:19-21. Deputy Morgan was never disciplined for his involvement with the outside company. *Id.* 7:2-4.

- *Sergeant Phillip Lynch* and *Deputy Corporal Joseph Zbilski*: Lynch and Zbilski together delivered expired commissary food items to an indigent female inmate. PSAF ¶ 10; R. 117-2, Pl.'s Exh. I (Lynch Dep.) 24:11-26:4. Lynch testified that it was "common knowledge" that indigent inmates sometimes received expired items from commissary free of charge, and that it did not constitute a violation of Sheriff's Office policy. Lynch Dep. 27:20-28:1; 41:22-42:6. Lynch's supervisor spoke with him about the incident, and directed Sergeant Lynch to cease contact with the inmate. *Id.* 28:18-29:2; R. 117-2, Pl.'s Exh. J (Performance Documentation Form).

- *Sergeant Edmund Moore*: Moore worked security at a bar and failed to report that outside employment as required by department regulations. R. 117-5, Pl.'s Exh. N 11:2-11. When Moore's supervisor found out about Moore's security job, the supervisor told Moore to quit the job and issued him a written reprimand. *Id.* 12:17-22, 13:10-14; R. 117-5, Pl.'s Exh. M (Performance Documentation Form). Sergeant Moore was not referred to the Merit Commission, nor did Internal Affairs investigate the incident. *Id.* 13:1-9.

In addition to her claim that her firing was discriminatory, Kuttner also alleges that she was not promoted because of her sex. Am. Compl. ¶ 30. As evidence, Kuttner notes that in her twelve years with the Sheriff's Office, Kuttner never received a promotion to either corporal or sergeant. PSAF ¶¶ 23, 25, 29. Appointments to the

---

[3]During the course of discovery, the Court ruled that Kuttner's discovery of similar misconduct by other DuPage County deputies was confined to the period from January 1, 2006 to the present. R. 45-1 (August 8 Order). But because the summary judgment record reflects that Kuttner had an "unblemished . . . disciplinary record," R. 96-5, Defs.' Exh. 5, evidence that male deputies who committed similar misconduct and who had a disciplinary record (even one pre-dating 2006) will be considered for the limited purpose of determining whether Kuttner's punishment was disproportionate by comparison.

corporal position do not require any specific qualification; they are made upon the recommendation of supervisors. *Id.* ¶ 25; R. 117-3, Pl.'s Exh. L (Kuttner Aff.) ¶ 17. Kuttner alleges that less senior male deputies were appointed to the corporal position over her, but she does not provide record support for those allegations. *See* PSAF ¶ 25. A promotion to sergeant, unlike promotion to corporal, required an evaluation from Kuttner's supervisors and a minimum score on a written exam. R. 118-14, Pl.'s Exh. PP (Rules, Regulations and Procedures) § IV.A.4. Kuttner never took the written exam. DSOF ¶ 32. Kuttner claimed that she could not sit for the exam because she never received the requisite evaluation from her supervisor, but Kuttner did not provide any citation to the record for that claim. *See* Pl.'s Resp. DSOF ¶ 31; PSAF ¶ 29.

Lastly, Kuttner alleges that Defendants maintained discriminatory policies and conditions in the jail, alleging two categories of evidence in support: (1) the staffing policy in the female inmate section of the DuPage County jail is discriminatory, and (2) the safety mechanisms in that section of the jail are inadequate (as compared to the male inmate section of the jail). Am. Compl. ¶¶ 19-29, 32-34.[4] Four positions in the DuPage County jail are "female-only." PSAF ¶ 31. According to Zaruba, the "practice

---

[4]In support of her claim that there were discriminatory policies and conditions in the jail, Kuttner offered the deposition testimony of Wendy Sears, who has not worked at the jail since 1997. *See* R. 118-4, Pl.'s Exh. W 48:8-10. Sears's testimony about jail conditions is too remote in time to be relevant to Kuttner's claims, and in some instances, is not even based on personal knowledge. Because Kuttner could not rely on Sears's testimony at trial, the Court does not consider the evidence on summary judgment. *See Stinnett v. Iron Works Gym / Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002) ("The evidence [on summary judgment] need not be admissible in form . . . , but it must be admissible in content.").

is that female employees, female deputies, would generally or most likely be assigned to the female areas, the female inmate areas." R. 118-9, Pl.'s Exh. BB (Zaruba Dep. from *Lakics v. Zaruba*, No. 09-CV-6929) 94:22-95:3. Zaruba also testified that the jail is "always short on females, always, and 99.9 percent of the assignments are going to be female with female inmates and male to male inmates . . . ." *Id.* 96:16-18. The actual official written policy does favor female guards to be assigned when female inmates are showering or using the restroom. Specifically, the Illinois County Jail Standards provide that "[s]upervision shall be provided by a person of the same sex, where feasible, during periods of personal hygiene activities such as showers and toileting." R. 118-9, Pl.'s Exh. CC § 701.20(a)(5).

Kuttner offered evidence that, due to the staffing practices in the jail, it is more difficult for female deputies to exercise certain privileges and benefits of the job. For example, Susan Lakics, a female deputy, was denied "switch day" privileges (the ability to switch shifts with other deputies) because of the shortage of available deputies for the female-only posts. R. 118-3, Pl.'s Exh. V (Lakics Aff.) ¶ 40. And according to Latifa Chacon, another female deputy, female deputies are not able to use their sick days and vacation days as easily as male deputies and are sometimes required to work overtime because of the shortage of female deputies for the female-only posts. R. 118-6, Pl.'s Exh. X (Chacon Aff.) ¶¶ 13, 17-23; *see also* R. 118-6, Pl.'s Exh. Y (Copres Carr Aff.) ¶¶ 8-10. Sergeant Philip Lynch confirmed that "there have been a few instances where [a switch-day request] w[as] denied because we would have fallen below the minimum required female staff." R. 118-8, Pl.'s Exh. AA (Lynch Dep.) 8:6-9, 10:12-14. Sergeant

7

Lynch never observed a similar denial of a switch-day request by a male officer. *Id.* 11:4-6. Kuttner also offered evidence that the female-only posts were less desirable than many posts available to male deputies because, for example, the female assignments were all "mobile posts" that required the assigned deputy to walk throughout the shift, whereas male deputies were able to work some "sitting posts." *See* PSAF ¶ 34; Kuttner Aff. ¶ 26; Lakics Aff. ¶ 36; Chacon Aff. ¶ 11.[5]

In addition to the unfair policies, Kuttner offered evidence that the working conditions in the female section of the jail (where the vast majority of female deputies worked) are less safe than other sections of the jail because the jail doors for female inmates lacked certain safety mechanisms. *See* PSAF ¶ 47. Specifically, Kuttner offered evidence that between 2006 and 2009 some or all of the doors in a particular area of the female section of the jail lacked food slots in the cell doors, which meant that deputies had to open the door to the cell in order to deliver food to the female inmates. Kuttner Aff. ¶ 46; Lakics Aff. ¶ 49; Chacon Aff. ¶ 34; Carr Aff. ¶ 15; R. 118-7, Exh. Z (Shoenenberger Dep.) 9:6-14, 10:1-4, 11:5-8, 57:20-59:21; Lynch Dep. 17:9-22, 18:19-21, 19:9-20:8. The doors in that area also lacked double-automatic locking mechanisms, another feature that affects officer safety. Kuttner Aff. ¶ 46; Lakics Aff.

---

[5]Defendants did not deny the allegations of PSAF ¶ 34, but pointed out that ¶ 34 fails to comply with the local rules because it states multiple facts, and fails to provide specific citations to the record. Defs.' Resp. PSAF ¶ 34. Although it is true that ¶ 34 (and many other paragraphs in Kuttner's Rule 56.1 statement) did not comply with the rules, the factual contentions about the difficulty of the female posts, compared to male posts, are indeed supported by the cited exhibits, and therefore the evidence is considered on summary judgment.

¶ 49; Chacon Aff. ¶ 34; Carr Aff. ¶ 15; R. 118-7, Exh. Z (Schoenenberger Dep.[6]) 9:6-14, 10:1-4, 11:5-8, 57:20-59:21; Lynch Dep. 17:9-22, 18:19-21, 19:9-20:8.

The final Title VII claim raised in the briefs (although not in Kuttner's EEOC charge nor her amended complaint) is that Defendants retaliated against Kuttner in violation of Title VII. *See, e.g.*, R. 95, Defs.' Br. at 19; R. 110, Pl.'s Resp. ¶¶ 35-37. In June 2006, Kuttner and five other female deputies sent a letter to their supervisor regarding the shortage of female deputies in the jail. R. 117-1, Pl.'s Exh. A at 69. The letter noted that the shortage of female deputies, when combined with the staffing policy, "makes using other benefits and privileges very difficult . . . [and] leaves very little opportunity for any of the females to work sitting posts periodically." *Id.* The letter continued, "[t]he limitations due to our gender both limit our ability to equally utilize privileges as male deputies may and significantly affect our morale in the workplace." *Id.* After Kuttner's supervisor responded by letter the following day, *id.* at 70, Kuttner and another female deputy sent a follow-up letter that reiterated the problems caused by the female staffing policy, and specifically complained that the policy "is discriminating against females." *Id.* at 73-74. Kuttner claims that she was disciplined in February 2007 because of her previous complaints of discrimination. PSAF ¶¶ 56-58. At that time, Kuttner's supervisor revoked her switch-day privileges

---

[6] Lt. Schoenenberger's last name is spelled, inconsistently, as "Schoenenberger" and "Shoenenberger" in the record. *Compare, e.g.*, PSOF ¶ 29 ("Schoenenberger"); R. 98-2, Exh. 11 (Schoenenberger Dep.) ("Schoenenberger"); PSAF ¶ 12 ("Schoenenberger"), *with, e.g.*, Kutter Dep. at 70 ("Shoenenberger"); PSAF ¶¶ 31, 35, 37, 38, 52, 53, 54 (Shoenenberger).

and required Kuttner to attend retraining, which Kuttner found to be demeaning and embarrassing. *Id.* Kuttner also claims that, around this time, her file was sent to the State's Attorney's Office for review. PSAF ¶ 58. Kuttner sent another letter in July 2007, complaining of what she believed to be unfair treatment by her supervisors, but she did not allege that it was due to her gender. Pl.'s Exh. A (July 27, 2007 Letter). Finally, in March 2008 Kuttner sent a letter to her Chief complaining about safety issues in the female section of the jail, including the lack of food slots and double-locking doors. R. 117-1, Pl.'s Exh. B at 75-76.

On the state-law claims, Kuttner alleges that Defendants breached her employment contract because they did not provide her sick-leave and adoption benefits after she was fired. Am. Compl. ¶¶ 54-61. The Sheriff's policy on sick-leave benefits is that employees receive payment for accrued, unused sick time "[u]pon voluntary termination of employment." DSOF ¶ 22 (quoting Sheriff's General Order PER 1-1 AF). The policy further provides that if the employee does not give two weeks notice of her termination, her sick-leave credits are forfeited. *Id.* To receive adoption benefits "employees must provide documentation of the adoption petition, placement, and itemized receipts for expenses incurred." *Id.* ¶ 24 (quoting Sheriff's General Order PER 1-1 BF). Kuttner admits that she had not adopted any children as of the date of her firing. *Id.* ¶ 25; Pl.'s Resp. DSOF ¶ 25.

## II.   Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Centr., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

## III. Analysis

Defendants argue that they are entitled to summary judgment on both Kuttner's Title VII discrimination claim and her breach of contract claim. R. 94.

### A. Preliminary Issues

Defendants raise a number of legal arguments as to which of the Defendants are proper parties to this suit, in what capacity they can be sued, and the form of damages available against them. Because these arguments do not involve the adequacy of the evidence on summary judgment, the Court addresses them before turning to the core arguments Defendants raise in favor of summary judgment.

First, Defendants argue that Kuttner incorrectly named the "Office of the Sheriff, County of DuPage, Illinois" as a defendant in this case. *See* Defs.' Br. at 6-8. It may be that as a technical matter there is no such entity, but here, the Court and the parties have recognized all along that Kuttner brought suit against John Zaruba not only in his individual capacity (though that claim was dismissed), but also in his official capacity as the Sheriff of DuPage County. The prior dismissal-motion opinion

specifically noted that Zaruba cannot be sued in his individual capacity, but only in his capacity as Sheriff of DuPage County. *See* R. 28, Memo. Op. and Order at 10 n.6 (citing *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th Cir. 1998)). That is because Title VII authorizes suit only against an "employer"; persons cannot be sued in their individual capacities (unless they are unincorporated sole proprietors). *See Passananti v. Cook Cnty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012); *Carver v. Sheriff of LaSalle Cnty., Ill.*, 243 F.4d 379, 381 (7th Cir. 2001) ("[A Title VII claim] must proceed against the employer as an entity rather than against a natural person."). Therefore, Zaruba can be sued only in his official capacity. Insofar as Defendants argue that mistakenly naming the Sheriff's Office is a basis to dismiss all or part of the complaint, that argument is rejected. To repeat, however, the individual capacity claim against Zaruba is dismissed.

Defendants also argue that Kuttner's claim for punitive damages against DuPage County and Zaruba (in his official capacity) are barred. Defs.' Br. at 10-11. Defendants cite *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), which held that municipalities, including state officers in their official capacities, are immune from punitive damages in 42 U.S.C. § 1983 suits. 453 U.S. at 270-71; *see also Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) ("[P]unitive damages [may] be recovered against a government actor only in an individual capacity suit."). That case is not applicable to Kuttner's discrimination claims, which are brought under Title VII, but Kuttner's claim for punitive damages fails for another reason: Title VII does not allow a plaintiff to seek punitive damages against a governmental agency. 42 U.S.C. § 1981a(b)(1); *Baker v. Runyon,* 114 F.3d 668, 671 (7th Cir. 1997); *see also Hildebrandt*

*v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1032 (7th Cir. 2003) (holding that punitive damages against the Illinois Department of Natural Resources precluded as a matter of law for Title VII claims). Therefore, Kuttner's claim for punitive damages against Zaruba and DuPage County is dismissed.

Finally, Defendants argue that summary judgment should be granted for the County on all claims because the County did not employ Kuttner, did not have control over her employment status, and cannot be liable under a theory of *respondeat superior* for the actions of Zaruba. Defs.' Br. at 8-9. The Court agrees that Kuttner has neither alleged nor shown that the County was responsible for any discrimination or retaliation against her. Kuttner's response brief itself argues that she "has shown overwhelming evidence of custom and practice by the *Sheriff* of sexual discrimination." Pl.'s Resp. ¶ 9. Under Illinois law, there is no *respondeat superior* liability against the County for the acts of the Sheriff, because the Sheriff is an independently-elected officer rather than an employee of the County. *Moy v. Cnty. of Cook*, 640 N.E.2d 926, 929 (1994). Therefore, DuPage County cannot be liable to Kuttner on her Title VII claims. *Tangwall v. Stuckey*, 135 F.3d 510, 514 n.9 (7th Cir. 1998); *Riley v. Cnty. of Cook*, 682 F. Supp. 2d 856, 860 (N.D. Ill. 2010). However, DuPage County will nevertheless remain a defendant as a necessary party to this case, because it has a duty to pay judgments against Sheriff Zaruba for any official capacity claims. *Carver v. Sheriff of LaSalle Cnty.*, 787 N.E. 2d 127, 139 (Ill. 2003); *Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003).

## B.     Title VII

Kuttner alleges that Zaruba discriminated against her on the basis of sex (1) when he referred her to the Merit Commission and ultimately fired her, (2) when he failed to promote her before less-qualified male deputies, and (3) by maintaining policies and conditions in the jail that discriminated against female deputies. Kuttner also presents some evidence of retaliation, although she did not specifically include a claim for retaliatory discharge in either her EEOC complaint or her amended complaint in this case. Defendants have moved for summary judgment on all of Kuttner's Title VII discrimination claims.

A Title VII sex-discrimination plaintiff may seek to defeat summary judgment under either the direct or the indirect method of proof. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Under the "direct method," Kuttner may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that Defendants' discriminatory animus motivated an adverse employment action. *Id.* Absent direct proof of discrimination, Kuttner must proceed under the indirect method, which has three steps. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). First, Kuttner must make a prima facie case of discrimination, which requires her to establish that (1) she is a member of a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) a similarly situated male deputy was treated more favorably than she was. *See Coleman*, 667 F.3d at 845. Second, if the plaintiff makes a prima facie case, "[t]he burden then must shift to the employer to articulate some legitimate,

nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. Third, if the defendant articulates such a legitimate, nondiscriminatory reason, the burden shifts back to Kuttner, who must provide evidence that Defendants' stated reason is pretextual. *Id.* at 804–05. "Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011) (alteration in original) (internal quotation marks omitted).

Kuttner does not specifically say in her brief whether she is seeking to prove her Title VII claims under the direct method, the indirect method, or both. The last six pages of her response brief is a section entitled "The legal requirements to show discrimination," and sets out various points of law regarding Title VII claims, including the direct and indirect methods of proof. *See* Pl.'s Resp. at 9-15. But that is all the brief does—set out those legal principles without specifically connecting them to the facts of this case, and the response brief is thus unhelpful for identifying the legal theory under which she proceeds. The Court will nevertheless endeavor to address each of Kuttner's discrimination claims in turn. For the reasons explained below, of Kuttner's Title VII claims, only the discrimination claim based on Defendants' jail staffing policies survives summary judgment.

### 1. Termination

Kuttner claims that Sheriff Zaruba discriminated against her when he referred her to the Merit Commission in 2009, which ultimately fired her in 2010. Am. Compl. ¶¶ 35-48. Defendants make several arguments for why judgment should be entered in

their favor on this claim. First, Defendants argue that Zaruba and the County cannot be liable because they did not terminate Kuttner; the Merit Commission did. Defs.' Br. at 11-12. In other words, Defendants assert that Kuttner has failed to show that Zaruba *caused* her adverse employment action. This argument was raised by Defendants in an earlier motion to dismiss. *See* R. 18 (Defs.' Reply in Support of their Motion to Dismiss) at 4-5. The opinion explained then that causation was generally an issue for trial, R. 28 (Memorandum Opinion) at 8-10, and later clarified that in light of the Supreme Court's opinion in *Staub v. Proctor Hosp.*, — U.S. —, 131 S. Ct. 1186 (2011), Zaruba (in his official capacity) can be liable under Title VII so long as his discriminatory act—referring Kuttner to the Merit Commission—was a proximate cause of the Kuttner's eventual termination, R. 30.

There is no reason to reexamine that ruling on summary judgment. Under Defendants' theory, an employer could insulate itself from liability for any employment decisions by simply handing off final decision-making authority to another entity. This would be the case even though the supervisor wielded nearly sole authority—as Zaruba did—to initiate termination of employment, and even if the supervisor made that decision on discriminatory grounds. That type of structural insulation cannot be used to thwart the proximate-cause element where, as here, only a select few individuals (the Sheriff and the State's Attorney) have the authority to refer employees to the Commission for termination. For example, under Defendants' theory, Zaruba would be immune from Title VII liability even if he referred only female deputies to the Merit Commission for firing and never referred male deputies who committed comparable

misconduct. *Staub* rejected such a narrow view of causation, and instead held that evidence that a supervisor proximately caused an adverse employment action is enough to impose liability on the employer. 131 S. Ct. at 1194 ("We therefore hold that if a supervisor performs an act motivated by [discriminatory] animus that is intended . . . to cause an adverse employment action, and . . . that act is the proximate cause of the ultimate employment action, then the employer is liable." (emphasis omitted)); *see also Hicks v. Forrest Preserve Dist. of Cook County, Ill.*, 677 F.3d 781, 790 (7th Cir. 2012).

Kuttner has presented enough evidence to create an issue for trial that Zaruba proximately caused her termination (although, as discussed below, this does not resolve whether Zaruba acted with a discriminatory motive). It is undisputed that Zaruba referred Kuttner to the Merit Commission for firing, alleging that she violated six separate departmental policies.[7] DSOF ¶ 36. Whether Kuttner has created a genuine issue of fact as to Zaruba's discriminatory purpose is a separate issue that is addressed below, but causation is not a basis for awarding summary judgment in favor of Defendants on Kuttner's termination claim.

Defendants also contend that Kuttner cannot establish a prima facie case of discrimination because she has failed to present any admissible evidence that a similarly-situated male deputy was treated more favorably under similar

---

[7]Kuttner need not prove that the Merit Commission (the final decisionmaker) itself acted with a discriminatory motive. It is enough if Kuttner can establish that Zaruba, as her supervisor, acted in a discriminatory manner and proximately caused her termination. *Staub*, 131 S. Ct. at 1194; *Hicks*, 677 F.3d at 790.

circumstances. Defs.' Br. at 19-21. By pressing this argument, Defendants assume that Kuttner is proceeding under the indirect method of proof. That is a reasonable assumption, at least with respect to her Title VII claim for termination; Kuttner nowhere explains her theory of liability on this claim, and an examination of the record reveals no evidence that directly shows that Zaruba was acting with discriminatory animus when he referred Kuttner to the Merit Commission.[8]

That leaves the indirect method of proof. Kuttner has failed to present sufficient comparator evidence to establish a prima facie case of discrimination. Among the elements Kuttner must establish is (and at this point, the question is whether a reasonable jury could find) that "another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *Coleman*, 667 F.3d at 845 (quotation marks omitted). "The similarly-situated analysis calls for a 'flexible, common-sense' examination of all relevant factors." *Id.* at 846 (citing *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)). To be a relevant point of comparison, the employee "must be directly comparable to the plaintiff in all material respects, [although] they need not be identical in every conceivable way." *Id.* (internal quotation marks omitted). "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) *engaged in similar conduct* without such differentiating or mitigating circumstances as would distinguish

---

[8]Such as evidence of "suspicious timing, ambiguous statements oral or written, [or] behavior toward or comments directed at other employees in the protected group." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994).

their conduct or the employer's treatment of them." *Id.* (emphasis added) (internal quotation marksomitted). Although Kuttner need not present evidence, as Defendants argue, that "one of [Sheriff Zaruba's] deputies attempted to collect a debt for a third party, while the deputy was in uniform," Defs.' Br. at 19-20, Kuttner fails to show that her comparators engaged in sufficiently similar conduct to establish a prima facie case and survive summary judgment.

As comparators, Kuttner proposed four male Sheriff's Office employees who allegedly committed misconduct similar to hers but were not as harshly disciplined: Richard Morgan, Phillip Lynch, Joseph Zbilski, and Edmund Moore. PSAF ¶¶ 4-15. Deputy Morgan was accused of making personal visits to a female inmate in the jail in 2008. PSAF ¶ 4. Like Kuttner, Deputy Morgan was referred to the Merit Commission. *Id.* ¶ 5. The Merit Commission found him guilty of abuse of position (but not three other charges), and the Commission issued a written reprimand. *Id.* ¶¶ 5-6. Sergeant Lynch and Deputy Corporal Zbilski allegedly distributed expired commissary food items to an indigent female inmate. *Id.* ¶ 10. A supervisor talked to Sergeant Lynch, and they were instructed not to give out expired commissary items in the future. Pl.'s Exh. I (Lynch Dep.) 28:18-29:2; Pl.'s Exh. J (Performance Documentation Form). Sergeant Moore admitted to moonlighting as security for a bar. PSAF ¶ 15. He was told by his supervisor to quit the part-time job, and was issued a written reprimand. *Id.*

Although it is true that not one of these officers was fired for his alleged misconduct, the dissimilarity of the allegations against them, when compared to the

conduct to which Kuttner ultimately admitted, is "so significant that [it] render[s] the comparison effectively useless." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). This is true even though the Court is mindful that Kuttner is entitled to the evidence's reasonable inferences and that comparator-similarity need not be exact in order to fulfill the prima facie case. Here, as explained in more detail below, the most serious charge against Kuttner was that she abused her authority as a deputy sheriff to help a friend collect a debt. Although in some sense Morgan, Lynch and Zbilski abused their position, in that they were only able to do what they did because they worked in the jail, their conduct is by no means "directly comparable" to Kuttner's. *Coleman*, 667 F.3d at 846. The evidence as to Moore is even less comparable. Like Kuttner, Moore was working a second job contrary to Sheriff's Office policy. Unlike Kuttner, he was not accused of wearing his sheriff's uniform while doing so. Therefore, his violation of the rules was much less serious and is not a helpful point of comparison for Kuttner.[9] Although assessing comparator evidence is "usually a question for the finder of fact," here summary judgment is appropriate because "no

---

[9]Among the exhibits attached to Kuttner's statement of additional facts is a series of excerpts from the depositions of Deputy Morgan, Sheriff Zaruba, and Wendy Sears. *See* R. 118-18 and 118-19 (Pl.'s Exh. YY). The deposition excerpts are not specifically referenced anywhere in Kuttner's 56.1 statements, but according to the Kuttner's Exhibit List, Exhibit YY is a "List of additional incidents Corroborated." R. 117 (Plaintiff's Exhibit List). It is not clear whether Kuttner intends to offer these exhibits as additional comparator evidence, but if so, the deposition excerpts are confusing and lack sufficient detail to meet her burden on summary judgment. The exhibit, for example, lacks information such as the date of the relevant misconduct and the position of the employee who allegedly committed misconduct. And Kuttner also fails to establish that the misconduct at issue is sufficiently similar to the charges she faced.

reasonable fact-finder could find that [Kuttner] ha[s] met [her] burden on this issue."
*Srail v. Vill. of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009). Although Kuttner did not need
to present evidence of a deputy accused of committing the same misconduct, what she
needed was some situation where a male deputy tried to use his uniform to convey the
impression that he was acting on the authority of the Sheriff's Office, but was not
subject to firing. Kuttner has presented no such evidence.

Without relevant comparator evidence, Kuttner's claim falls short of even
presenting a prima facie case of discrimination. But even if Kuttner can get through
the first step of the indirect method of proof, Defendants argue that they have offered
a legitimate, non-discriminatory reason for her firing, and Kuttner has not provided
evidence that the reason was pretextual. Defs.' Br. at 12-15. In the course of her
proceedings before the Merit Commission, Kuttner admitted that she visited the home
of a person who she knew owed a debt to her friend. DSOF ¶ 12; *see also* Defs.' Exh. 4
(Stipulation). She knocked on the door and spoke with the person's father, eventually
leaving a business card with her name on it. *Id.* At the time, she was at least partially
dressed in her Sheriff's uniform. *Id.* Kuttner admits to those facts, but denies that she
was trying to collect a debt for her friend at the time. Pl.'s Resp. to DSOF ¶ 12. Kuttner
admitted to two violations (conduct unbecoming and wearing of the uniform), and the
Merit Commission found that her actions "constitute[d] an egregious indifference
and/or lack of judgment to the requirements of her office and position." DSOF ¶¶ 10,
17. In light of those findings, the Merit Commission determined that termination of
employment was appropriate. *Id.* ¶ 18. Based on that evidence, Defendants have

offered a legitimate, non-pretextual reason for Kuttner's firing. Kuttner offers no response to Defendants' argument; the first mention of pretext by Kuttner is in the last section of her brief discussing the legal elements of a Title VII claim—but with no reference to the facts of this case. *See* Pl.'s Resp. at 12. Kuttner offers no evidence that Defendants' proffered reason for her firing (and referral to the Merit Commission in the first place) was pretextual.

Because Kuttner both fails to establish a prima facie case of discrimination based on her termination from the Sheriff's Office, and fails to provide evidence that Defendants' proffered reason for her termination was pretextual, summary judgment is granted to Defendants on this Title VII claim.

### 2. Failure to Promote

Kuttner also alleges that Zarbua did not promote her to corporal or sergeant because of her gender. Defendants argue that summary judgment should be granted in their favor because this claim involves conduct that occurred more than 300 days before the filing of Kuttner's EEOC complaint on March 11, 2010. Defs.' Br. at 16. Kuttner simply responds that discrimination was "ongoing . . . and [ ] exists to this day." Pl.'s Br. at 6. Unfortunately, neither party engages with the facts to determine whether Kuttner's failure-to-promote claim falls outside the applicable 300-day filing deadline. *See Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1159 (7th Cir. 2012) ("[T]he 300-day period within which the employee is required by Title VII to file an administrative complaint begins to run as soon as he is informed of the allegedly unlawful employment practice."). Although Kuttner's failure to respond with specificity

to Defendants' argument could be deemed a waiver, *Bagley v. Blagojevich*, 646 F.3d 378, 395 (7th Cir. 2011) ("Failure to show how any evidence in the record tends to support [ ] a claim generally results in a waiver of the argument." (internal quotation marks omitted)), even an independent review of the record shows no evidence that she was denied a promotion during the 300-day period leading up to March 11, 2010.

It is undisputed that in her 12 years with the Sheriff's Office, Kuttner was never promoted to corporal or sergeant.[10] Defendants assert, citing to Kuttner's deposition, that the failure to promote her cannot be the basis of a Title VII claim because she never requested a corporal assignment, and never took the test to be eligible for a promotion to sergeant. DSOF ¶¶ 30, 32 (citing Defs.' Exh. 9 at 76-83). Kuttner responds, with some support in the record, that the corporal positions are assigned, and that no request need be made to receive the promotion. Pl.'s Resp. DSOF ¶ 30. While that may be true, Kuttner still fails to present evidence that at some specific time in the 300 days leading up to the filing of her EEOC complaint she was passed over for a promotion (to either corporal or sergeant) in favor of a less qualified male. Kuttner references a number of male deputies that received promotions to corporal in

---

[10]To the extent Defendants argue that the denial of a promotion to the corporal position was not an adverse employment action under Title VII, Defs.' Resp. PSAF ¶¶ 15, 24, that argument is rejected. Kuttner offers evidence that the corporal position "includes a salary increase, more benefits, preferred hours, supervisory title, higher status, [and] more responsibilities/preferred work." PSAF ¶ 24 (citing to Pl.'s Exh. NN (Zaruba Dep.)). Kuttner has at least created a genuine issue of fact on whether the failure to promote constituted an adverse employment action under Title VII. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 899 (7th Cir. 2003) (finding denial of a promotion to a "team leader position" with "slightly higher pay" may constitute an adverse employment action).

her statement of additional facts, but she presents no evidence as to when these promotions were granted. *See* PSAF ¶ 25. As for sergeant promotions, Kuttner's own exhibit reflects that the allegedly discriminatory promotions were made in August of 2006. *See* R. 118-14, Pl.'s Exh. RR. Because Kuttner presents no evidence of an adverse employment action within the relevant time frame, summary judgment is granted to Defendants on this claim.

Even assuming Kuttner established that she was denied a promotion within the 300-day limitations period, Defendants also challenge the sufficiency of her comparator evidence for this claim. Defs.' Br. at 19-21. The Court agrees that, just like Kuttner's claim based on her firing, she again presents insufficient comparator evidence to defeat summary judgment on the promotions claim. Kuttner alleges in her statement of facts that a number of male officers with less seniority were promoted to corporal over her, but she does not cite to any exhibit or piece of evidence to support this claim. *See* PSAF ¶¶ 26, 27. She might have some personal knowledge of their seniority, but she does not say she knows, nor does she say anything else about their qualifications. Her evidence as to the sergeant promotions is similarly problematic, as the cited exhibit nowhere establishes that the male officers that were promoted were less senior or less qualified than Kuttner. *See* Exh. RR. Her failure to raise a genuine issue of fact that less qualified male deputies received a promotion when she did not entitles Defendants to summary judgment on this claim. *Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010) ("Once the defendants have shown that the facts entitle them to judgment in

their favor, the burden shifts to [the plaintiff] to identify some evidence in the record that establishes a triable factual issue.").[11]

### 3. Jail Policies

Kuttner also claims that the jail maintains various policies that are sex-specific and therefore treat female deputies differently. Unlike Kuttner's claims related to termination and promotion within the jail, this claim is based on a policy that is facially discriminatory. Kuttner presents evidence that several positions in the jail are "female only," and that Zaruba himself described the policy as "female employees . . . would generally . . . be assigned to the female areas." PSAF ¶ 31; Pl.'s Exh. BB (Zaruba Dep.) at 94-95. That policy, combined with the shortage of female deputies in the jail as a whole, results in several disadvantages to female deputies: switching shifts and using sick days was more difficult; they were required to work overtime shifts; and they had limited opportunities to work more desirable shifts. *See* PSAF ¶¶ 31-46.

Because Kuttner has pointed to and presented evidence of a policy in the jails that is facially discriminatory and has a disparate impact on female deputies,

---

[11]Kuttner also failed to raise this failure-to-promote claim, as well as her claim that jail policies were discriminatory, in her EEOC complaint. That would normally entitle Defendants to judgment in their favor. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989). But Defendants did not raise the argument in their earlier motion to dismiss or their motion for summary judgment, and so it is waived. *Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 819 (7th Cir. 2000) ("[Exhaustion] is merely a precondition to bringing a Title VII claim in federal court, and is therefore subject to the doctrines of waiver, estoppel, and equitable tolling.").

Defendants "must demonstrate that the practice is 'job related' and 'consistent with business necessity.'" *Allen v. City of Chicago*, 351 F.3d 306, 311 (7th Cir. 2003) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(I)). Defendants do not offer any business-related necessity for the policy, or any justification for the policy at all. Defendants rest on an argument that Kuttner has failed to identify a discriminatory policy within the jail. Defs.' Br. at 19-21. But, as explained above, she has done exactly that. Kuttner has produced sufficient evidence of those policies to defeat summary judgment. Kuttner's Title VII claim based on jail staffing policies will proceed to trial, as will Kuttner's related claims that the safety measures in the female section of the jail (where female deputies were required to work) were less protective than other sections of the jail.

### 4. Retaliation

Finally, both Kuttner's Amended Complaint and response to Defendants' summary judgment motion briefly mention a claim based on retaliatory discharge. *See* Am. Compl. ¶¶ 4, 27; Pl.'s Resp. ¶¶ 27, 35-37. Defendants argue Kuttner's retaliation claim is precluded because the alleged retaliation occurred more than 300 days before the filing of Kuttner's EEOC complaint. Defs.' Br. at 16. Reviewing Kuttner's Amended Complaint and filings on summary judgment, it is not entirely clear what Kuttner is alleging to be the retaliatory act or the complaints that led to any alleged retaliation. In her Amended Complaint, Kuttner mentions a June 2006 letter she sent complaining about discriminatory treatment, and then alleges that she suffered retaliation due to this complaint when she was assigned certain undesirable shifts. Am. Compl. ¶¶ 24-27. Kuttner presented no evidence that would bring these allegations within the 300-day

period leading up to March 11, 2010. *See* PSAF ¶¶ 52-60. Even if Kuttner argued (and she does not) that her 2010 termination was related to her complaints in 2006 and 2007, those events are too attenuated in time for a jury to reasonably conclude that her termination was based on retaliation. *See Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001) ("The inference of causation weakens as the time between the protected expression and the adverse action increases, and then additional proof of a causal nexus is necessary." (internal quotations marks omitted)).

Because Kuttner has failed to present evidence to bring her retaliatory discharge claim within the 300-day period before filing her EEOC complaint, summary judgment is granted to Defendants on this claim.

## C. Breach of Contract

Kuttner also claims that Defendants breached her employment contract by failing to pay her for accrued sick time and failing to provide her with adoption benefits. Defendants argue that under the specific terms of Kuttner's employment agreement, there was no breach. Defs.' Br. at 17-18. The Court agrees that Kuttner fails to present evidence that Defendants were in breach of the employment agreement. Kuttner was not eligible for unpaid sick leave benefits because her employment termination was not voluntary. *See* DSOF ¶ 22 (citing Defs.' Exh. 7). She was not eligible for adoption benefits at the time of her firing because she had not actually gone through the adoption process. *See id.* ¶ 25. In response, Kuttner claims that by August 2011 the adoption process had begun, Pl.'s Resp. DSOF ¶ 25, but that is well after the

February 24, 2010 end of her employment.[12] Summary judgment is granted to Defendants on Kuttner's breach of contract claim.

## IV.    Conclusion

For the reasons stated above, Defendants' motion for summary judgment, R. 94, is granted in part and denied in part. The only claim that survives and may proceed to trial is Kuttner's claim that the Sheriff's Office maintained discriminatory staffing policies with respect to female deputies.[13] The November 19, 2013 status hearing is reset to October 16, 2013, at 9 a.m. The parties should be prepared to address the case schedule moving forward, including whether to hold a settlement conference.

ENTERED:


        s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

Dated: September 30, 2013

---

[12]Because the Court grants summary judgment to Defendants on Kuttner's termination claim, any argument based on the assumption that her termination was unlawful must also fail. Therefore, Kuttner's argument that she would have eventually been eligible for adoption benefits had she not been terminated, or that sick leave benefits should have been awarded because she should not have been fired, are rejected.

[13]It is worth noting that the staffing-policies claim, as the only remaining claim, is the only possible claim on which Kuttner can be considered a prevailing party for fees-shifting purposes under 42 U.S.C. § 1988, and that is assuming she wins at trial. The termination and promotion claims are separable from the staffing-policies claim for purposes of what attorney's fees would be recoverable.